UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>ANTHONY BRAVO,<br>Defendant. | CR. NO. 24-00020(01) LEK-WRP |

**ORDER DENYING DEFENDANT'S MOTION TO DETERMINE STANDING TO CHALLENGE INTERCEPTED COMMUNICATIONS**

On July 12, 2026, Defendant Anthony Bravo ("Bravo") filed a Motion to Determine Standing to Challenge Intercepted Communications ("Standing Motion"). [Dkt. no. 462.[1]] Plaintiff United States of America ("the Government") filed its response in opposition to the Standing Motion ("Opposition") on July 27, 2026. [Dkt. no. 469.] The Standing Motion is suitable for disposition without a hearing. See Criminal Rule CrimLR12.2(a)(1). On July 31, 2026, this Court issued an entering order informing the parties of its ruling on the Standing Motion. [Dkt. no. 473.] The instant Order supersedes that entering order. As follows, Bravo's Standing Motion is denied because Bravo does not have standing under the Fourth

[1] Docket number 462 is a redacted version of the Standing Motion. An unredacted version was filed on August 4, 2026. [Dkt. no. 474.] All subsequent references to the Standing Motion in this Order refer to the unredacted version.

Amendment nor Title III of the Omnibus Crime Control and Safe Streets Act ("Title III") to bring a motion to suppress the intercepted telephone calls that he made while a prisoner and on a contraband telephone.

**BACKGROUND**

Bravo is charged with one count of conspiracy to distribute and possess with intent to distribute controlled substances ("Count 1") and nine counts of distribution of a controlled substance ("Counts 12-20"). See Indictment, filed 4/4/26 (dkt. no. 1), at 2-4, 6-7.

The charges against Bravo arise from an investigation into an alleged drug trafficking organization involving persons in Las Vegas, Nevada and in Hawai`i. As part of this investigation, the Government obtained authority to intercept calls from various cell phones. See Standing Motion, Mem. in Supp. at 2; Standing Motion, Exh. A (Order Authorizing the Interception of Wire and Electronic Communications, filed 11/14/23 ("11/14/23 Intercept Order")). One of the target telephones was used by Bravo while he was incarcerated at Kern Valley State Prison in California ("Kern Valley").[2] See Standing Motion, Mem. in Supp. at 2; Opposition at 2; see also Standing

[2] The Government represents that, during the relevant period, Bravo was serving a life sentence at Kern Valley. See Opposition at 2.

Motion, Exh. A (11/14/23 Intercept Order) at 3 (listing Bravo among the targets to be intercepted); id. at 5 (identifying a telephone "believed to be used by BRAVO" as one of the target telephones). The Government - with the help of Verizon Communications ("Verizon"), which maintained and serviced the cell phone at issue here – intercepted calls made by Bravo. See Standing Motion, Mem. in Supp. at 2.

According to the Government, during the investigation, approximately five contraband cell phones were confiscated from Bravo's prison cell at Kern Valley. [Opposition at 2-3.] The Government asserts that "Bravo used the contraband cellphones to communicate with others outside of the prison and orchestrate the shipment of hundreds of pounds of methamphetamine and kilos of fentanyl and carfentanil to the Hawaiian Islands and elsewhere." [Id. at 3.]

Bravo contends that he has standing to file a motion seeking the suppression of the intercepted telephone calls that he made on the contraband cell phone. See Standing Motion at PageID.3160; id., Mem. in Supp. at 1, 5. Bravo argues that he has standing both under the Fourth Amendment to the United States Constitution and under Title III. See Standing Motion, Mem. in Supp. at 3-6.

## DISCUSSION

### I. Fourth Amendment Standing

"To have standing to challenge an illegal search, a defendant must show that he personally had a property interest protected by the Fourth Amendment that was interfered with," or that "he had a reasonable expectation of privacy that was invaded by the search." Chong v. United States, 112 F.4th 848, 862 (9th Cir. 2024) (per curiam) (citations and internal quotation marks omitted), *cert. denied sub nom.* Tran v. United States, 145 S. Ct. 1218 (2025). To establish standing based on a reasonable expectation of privacy, "the defendant has the burden of showing, under the totality of the circumstances, the search . . . violated his legitimate expectation of privacy." Id. at 862-63 (brackets, citation, and internal quotation marks omitted).

> It is well established that incarcerated persons lack any protected privacy interest in their cells and personal property. See Hudson v. Palmer, 468 U.S. 517, 525-26, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (no privacy interest in cell and its contents). Accordingly, the Fourth Amendment's warrant requirement and reasonableness standard do not apply to cell searches or the seizure of inmate property. Id. . . . .

United States v. Yandell, No. 2:19-cr-00107 KJM, 2022 WL 1607923, at *3 (E.D. Cal. May 20, 2022). Bravo concedes that he does not have a reasonable expectation of privacy in his "papers

and effects" within his prison cell. See Standing Motion, Mem. in Supp. at 1 (citing Hudson v. Palmer, 468 U.S. 517, 526 (1984)). Bravo also concedes that a contraband phone brought into a prison cell can be seized, and the phone's contents can be searched, without a warrant. See id. at 7. However, he argues that "he still has a reasonable expectation of privacy in the intercepted conversations stored and maintained by cellphone carriers outside the prison walls." [Id. at 1-2 (citing Carpenter v. United States, 585 U.S. 296, 320 (2018); Chatrie v. United States, 609 U.S. ___, 2026 WL 1855568 (2026)).] This argument is a distinction without a difference.

Bravo attempts to equate his intercepted conversations maintained by Verizon with the cell-site location information ("CSLI") at issue in Carpenter.[3] In Carpenter, the United States

---

[3] The Supreme Court described CSLI as follows:

> Each time the phone connects to a cell site, it generates a time-stamped record known as cell-site location information (CSLI). The precision of this information depends on the size of the geographic area covered by the cell site. The greater the concentration of cell sites, the smaller the coverage area. As data usage from cell phones has increased, wireless carriers have installed more cell sites to handle the traffic. That has led to increasingly compact coverage areas, especially in urban areas.
>
> Wireless carriers collect and store CSLI for their own business purposes . . . . While carriers have long retained CSLI for the start

(. . . continued)

Supreme Court held that "when the Government accessed CSLI from the wireless carriers, it invaded [the defendant]'s reasonable expectation of privacy in the whole of his physical movements." 585 U.S. at 313. There, the defendant's reasonable expectation of privacy was invaded by the Government's seizure of CSLI from wireless carriers because the defendant had a reasonable expectation of privacy in his physical movements, **not** because he had a reasonable expectation of privacy in the CSLI itself. Cf. id. at 310 ("A majority of th[e Supreme] Court has already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements." (citations omitted)). Carpenter is further distinguishable because the defendant (unlike Bravo) was not incarcerated when he made the cell phone calls that created the CSLI. See id. at 301-02 (describing the circumstances that led to the collection of CSLI showing the defendant's movements). Chatrie, 146 S. Ct. 2193, 2026 WL 1855568, is also inapplicable for the same reasons as Carpenter. See 146 S. Ct. at 2199 ("An individual has a

---

> and end of incoming calls, in recent years phone companies have also collected location information from the transmission of text messages and routine data connections. Accordingly, modern cell phones generate increasingly vast amounts of increasingly precise CSLI.

Carpenter, 585 U.S. at 301.

reasonable expectation of privacy in records about his cell phone's location, and police intrude on that constitutionally protected interest when they demand the information — even though for only a limited time, and from a third-party tech company."); id. at 2202-03 (describing the circumstances that led to the defendant's identification through a warrant for cell-phone location data).

No binding authority addressing whether an incarcerated person has a reasonable expectation of privacy in data or recordings generated by wireless carriers when the incarcerated person makes calls on a contraband cell phone appears to exist. However,

> [s]everal courts in the Ninth Circuit and elsewhere, applying Hudson, have concluded that prisoners have no reasonable expectation of privacy in using contraband cellphones and therefore cannot maintain Fourth Amendment claims based on seizure of the phones or their contents. See, e.g., Shea v. United States, 2016 U.S. Dist. LEXIS 194920, 2016 WL 3750975, at *5 (D. Nev. Apr. 16, 2016), adopted by 2018 U.S. Dist. LEXIS 133733, 2018 WL 3747282 (D. Nev. Aug. 7, 2018); Hayes v. Cal. Dep't of Corr. & Rehab., 2019 U.S. Dist. LEXIS 216049 at *4, 2019 WL 9362650 at *--- (C.D. Cal. Dec. 16, 2019); United States v. Bash, 2021 U.S. Dist. LEXIS 143002 at *10, 2021 WL 3207252 at *--- (E.D. Cal. Jul. 29, 2021).
>
> Basic Fourth Amendment principles compel the same result in the context of intercepted communications using contraband cellphones. California Penal Code section 4576 prohibits a prisoner from possessing a cellular telephone. Because cellphones are contraband, California inmates can have no reasonable or legitimate

> expectation of privacy in communications that take place using them. See United States v. York, 2017 WL 5068143 at *4 (E.D. Cal. Sept. 29, 2017) (in light of Cal. Pen. Code § 4576, defendant "could have no reasonable expectation of privacy in communications that took place over his contraband cellular telephone" and thus lacked standing to challenge wiretap); United States v. Rodriguez, 2015 WL 468358 at *1 (S.D. Cal. Feb. 3, 2015) ("No court has ruled that a prison inmate has a reasonable expectation of privacy for communications he makes by cellular telephone.").

Yandell, 2022 WL 1607923, at *3-4. This Court agrees with and adopts the analysis in Yandell.

In sum, Bravo did not have a reasonable expectation of privacy either in the contraband cell phone itself or in the communications that he participated in while using the contraband cell phone. Bravo's argument, therefore, that he had a reasonable expectation of privacy in the recordings of, or the information about, those conversations that Verizon stored and/or maintained outside of Kern Valley is firmly rejected. See Standing Motion, Mem. in Supp. at 1.

As Bravo does not have standing under the Fourth Amendment to seek the suppression of the intercepted communications, the Standing Motion is denied as to Bravo's Fourth Amendment argument.

## II. Title III Standing

Bravo also argues that he has standing under Title III because he is an "aggrieved person" as to the intercepted

communications. See id. at 3 (citing 18 U.S.C. §§ 2518(10)(a), 2510(11)).[4]

Title 18 United States Code Section 2518(10)(a) states, in pertinent part:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

Title 18 United States Code Section 2510(11) states: "'aggrieved person' means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."

At first blush, based solely upon the language of Section 2510(11), Bravo appears to be an aggrieved person under

[4] At a July 29, 2026 status conference, see Minutes - EP: Further Status Conference, filed 7/29/26 (dkt. no. 471), Bravo's counsel confirmed that, if Bravo is permitted to file a motion to suppress pursuant to Title III, the motion to suppress would challenge the necessity and authorization of the wiretaps, and the motion to suppress would not be based on an alleged violation of his privacy interests.

Title III. However, "Title III does not apply to law enforcement interceptions of communications made on contraband prison cell phones." United States v. Bash, Case No. 1:20-CR-00238-JLT-SKO, 2022 WL 4788482, at *3 (E.D. Cal. Oct. 3, 2022) (citing United States v. Rodriguez, No. 13cr4514-BEN, 2015 WL 468358, at *4 (S.D. Cal. Feb. 3, 2015) ("It would be an ironic interpretation of the law to find that a prison inmate, who by virtue of his initial crime and conviction, when he is placed in a cellblock where he has no Fourth Amendment rights, and when he commits a further crime by obtaining and using a contraband cellular telephone, acquires a statutory right under Title III to be free from law enforcement eavesdropping, unless a Title III wiretap order is first obtained") (emphasis omitted)); see also United States v. York, 1:16-cr-00069-LJO-SKO-11, 2017 WL 5068143, at *4 (E.D. Cal. Sept. 29, 2017) (agreeing with Rodriguez).

The district court in Bash ruled that Title III did not apply to communications intercepted while the defendant was using a contraband cell phone while he was incarcerated in a state prison, even though the defendant did not argue that the wiretaps violated his Fourth Amendment rights. See 2022 WL 4788482, at *2 ("Bash complains that the wiretap applications . . . contained material misrepresentations and otherwise do not meet the necessity requirement because traditional investigative methods were not sufficiently explored against the targets of

wiretaps."); see also York, 2017 WL 5068143, at *1 (noting that the motion to suppress "argu[ed] that the affidavits submitted in support of the wiretap orders lacked probable cause and failed to show the exhaustion of other investigative techniques (necessity)").

This Court concludes that Title III does not apply to Bravo's intercepted communications made on a contraband cell phone while he was in a California prison. Thus, Bravo does not have standing under Title III to bring a motion to suppress. The Standing Motion is therefore denied as to Bravo's Title III argument.

## CONCLUSION

For the foregoing reasons, Bravo's Motion to Determine Standing to Challenge Intercepted Communications, filed on July 12, 2026 and refiled on August 4, 2026, is DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 19, 2026.

/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
Senior U.S. District Judge